The next case today is United States v. Edwin Gonzalez, appeal number 191351. Attorney Height, you may proceed. May it please the court, at first I would request two minutes rebuttal if the court approves. Yes. Thank you. The appeal in this case centers on the issue of whether the life sentence without parole imposed upon Edwin Gonzalez for crimes committed at 20 years of age is violative of the Eighth Amendment, or aside from Eighth Amendment considerations, is such a sentence unreasonable given the age of Gonzalez when these crimes were committed. The crux of our argument rests on one that floods our news nearly every day in this pandemic crisis. Follow the science and what is proven, not the politics and some arbitrary decision that is not grounded on proven facts. But, Ms. Height, our first priority is usually to follow the Supreme Court, and the Supreme Court has drawn the per se line that you seek to have us draw at age 18. Your client falls, for your purposes, on the wrong side of that line. Yes, Your Honor, I realize that, and I realize that we have... And it seems to me that you may have a persuasive argument in this regard, but I wonder if it should be addressed to the Supreme Court rather than this court. I mean, we've been told by the Supreme Court so far that mandatory life sentences without parole for adult offenders, which the Supreme Court defines as persons over 18, with exceptions for things like retardation, are not unconstitutional. Well, Your Honor, I think that number one, the Miller case on which we're discussing, occurred 2012. That was eight years ago. Well, that's true, but there's nothing in the charter of this court that says that we are bound only by Supreme Court decisions that happened, that came down two years ago or three years ago. No, Your Honor, but I believe that this court has the room to consider future events and subsequent events and how it impacts upon a particular case. And I would point out, in a subsequent case in 2017, in the Moore case, the Supreme Court specifically stated that the court, in that particular case, which was a death penalty case, applied current medical standards in conceding that Moore was intellectually disabled for the death penalty to be applied. And we think that this kind of decision to apply current scientific or medical standards gives this court an opening to address this particular issue. Five minutes remaining. I would point out, in this particular context, which is somewhat unusual, the government at no time contests the facts that science has developed to the point to say that there is no difference between the frontal lobe brain of an 18-year-old and that of a 20-year-old. And this is the standard that should follow in a particular case. And I ask Mr. Lockhart about that, but I read the government's position as, rather than not contesting that fact, they're saying that that fact simply should not be the basis for our inquiry. That there's no evidence been submitted on it in the district court and that the Supreme Court has drawn the line and we should follow that line. Well, Your Honor, number one, there was significant evidence presented. There was a huge affidavit from an expert that even mentioned the Miller case and the subsequent cases and also pointed out specifically the difference in brain development between 18-year-olds and 20-year-olds, which there are none. I would point out that another inquiry that this court could possibly make or involve is, and what the prosecutor says is, well, this was a discretionary sentence, so this court does not have jurisdiction, it does not fall within the realm of the Supreme Court cases. But I would counter that by saying that a life sentence without parole is a life sentence and whether it's imposed under the guidelines or under the statute, it makes no difference. A life sentence is a life sentence. Well, there is an obvious difference, isn't there? One sentence is mandatory. The sentencing judge has no discretion to impose a more lenient sentence. And that was true in a case like Miller. In a case like the case we're dealing with, the sentencing judge has not only a right but an obligation to exercise a discretion and that discretion can be found to be abused. So that seems to me, from a defendant's point of view, a very important distinction between the two types of sentences. I thought the Supreme Court has granted cert on this exact issue, whether it applies to discretionary sentences. They have, Judge Barron, in the death penalty case. I don't know if that was a death penalty. It was the life without parole in the Malvo case and the Moore case that the government has countered. And one of my inquiries or requests is that perhaps this case should be held in abeyance. I would say with respect to the discretionary, the life sentence in this particular case, that the Supreme Court cases in Montgomery and in Adam have specifically stated that you have to make specific findings. Is this person ineligible for imposing a life sentence? Before I want you to talk about the, this is not a constitutional case, but just a straight sentencing guidelines or sentencing 3553 case also. But before doing that, a key question seems to me for what we can or can't do in response to this argument is how we're supposed to understand what the court has done in Miller in saying that it's unconstitutional to have a mandatory life sentence without parole for a person under 18. Is the way you seem to think that that doesn't help the conclusion that it is constitutional to have it for a 20 year old? And is that how I should understand it? In other words, when the court held that it's unconstitutional to impose such a sentence for someone 18 and under, they were not thereby also saying it is constitutional to have it for a 19 or 20 year old. I think that they did not say that it was constitutional. They said that they were drawing a line at 18 and really did not address the questions or the issues that we are presenting herein. And we would say that it is unconstitutional given undisputed neuroscience findings that there is really no difference between the brain of an 18 year old and a 20 year old. Ms. Heiden, in response to Judge Barron's questions, Miller himself was not 18 when he committed the crime. He was younger than that. And so in drawing the line at 18, it seems reasonable to imply, if it's not expressed, that the Supreme Court believed that that was the line that separated 8th Amendment violations from non-8th Amendment violations when dealing with youthful offenders. And mandatory life imprisonment without possibility of parole. Do you recall what the line that the counsel in Miller sought for the court to draw? Was it asking for a line at 18? I believe that it was asking for a line of 18. And in response to Judge Bruce's question, I think that what we would say is drawing a line... That's time. Pardon me? Finish your answer, please. Okay, drawing a line is inherently unreasonable in cases of this nature where there is no difference between the 18 and 20 year old. And there's no evidence to present that contradicts this particular supposition. So such a line is arbitrary and capricious, and I don't think that the court should approve. Okay, counsel, thank you. Counsel, you've reserved two minutes. Are there any further questions? If you could just address the... Forget the 8th Amendment claim. Imagine that all we have, that the constitutional challenge we conclude doesn't work just for the moment, just by assumption. You make a separate argument that just as a sentencing, exercise of sentencing discretion, there was error here because of a failure to consider. And I'm just trying to figure out how to imagine we're supposed to do that. Is that under 3553? What is the mechanic of the legal argument of what you think a district court judge is required to do in sentencing if there's no constitutional prohibition against a sentence of this kind? Well, I would suggest that the court, the district court, certainly has the pattern of the Supreme Court decision as to what language or what findings could be made with a life without parole decision. It's also been said that the life without parole is a living death sentence. In capital cases, before you can impose a death sentence, you must make certain findings. And we would suggest that the same conclusion should be reached, especially when you're sentencing a youth at 20 years old, where a life sentence without parole is certainly different from sentencing a 50-year-old man to life without parole. It's much more punitive. On that question, I guess what I couldn't quite tell from your brief, I could imagine two different schemes. One is you have to make a finding about whether they're incorrigible or not. And then is that dispositive or is the idea that before you can sentence a life term, you at least have to have made that finding and then decide whether in light of that finding, a life sentence is still warranted? I would say that that is true. And I would also have to say that not only incorrigible, but whether this person is incapable of rehabilitation. And who can tell in 30 or 40 years, which is a lengthy sentence that probably would have been imposed in this case, that this person would not be the same person that he was at play, that he is at 50 or 60 years old. And I think these are facts that even constitutionally, the court is obliged to follow before imposing such a harsh and punitive sentence. Thank you. We'll hear from the government now. And you have reserved two minutes. Do I shut myself off? Yes. Attorney Hite, please mute your video and audio. Proceed. She may still be having trouble muting her video. If it's all right with you, we would just proceed with it rather than remove her from the meeting at this point. Yes. Yes, that's fine. Go ahead, Mr. Lockhart. Good morning. Donald Lockhart for the government, and may it please the court. As Judge Selya pointed out, this court obviously has a duty to follow the Supreme Court and not to follow science. It's really for the Supreme Court to decide in some future case whether intervening scientific studies justify shifting the line drawn in Miller from age 18 to age 21. We believe the age factor alone is dispositive here. Mr. Gonzalez was 20 years old when he planned, orchestrated, and committed two very brutal murders. And from our perspective, on the 28-J letter we sent you recently concerning the Jones versus Mississippi pending decision of the Supreme Court, you should simply hang your hats on the age factor. You don't need to await for the outcome in Jones, and you don't need to address whether the discretionary nature of the sentence in this case is sufficient without more to defeat the defendant's Miller argument. I'm a little troubled by the idea that Miller binds us in the sense that imagine there's just a wealth of evidence that develops post-Miller scientifically, and the government has no reputation of it that shows that a 20-year-old is functionally identical to an 18-year-old. I don't really understand why it would make sense for a lower court to conclude that Miller, which never looked at any of that evidence, has already predetermined that the Eighth Amendment challenge fails. It would seem like one reading of the logic of Miller would be that in the face of evidence that strong, there'd be no reason not to apply its logic to a 20-year-old. Well, we respectfully disagree with that position, Your Honor. This seems to us quintessentially to be an issue for the Supreme Court, a very policy-based... How can it be if the evidence is identical? I just don't quite follow that. Is it a claim that Miller wasn't just focused on the evidence of the science? I'm sorry, could you repeat your question? Is the argument that the right way to understand Miller is that the science was not determinative there? Yes, I mean, I think the right way to understand Miller is that the court drew, consistent with its prior decisions, a hard and fast line. Why? Why did it draw it? The Supreme Court has said that many times now. Did it draw it based on the science? I'm sorry? Did it draw that line based on the science? No, Miller did not draw that line based on the science, which is precisely why any future argument based on science should be addressed to the Supreme Court and not to a lower court. It would represent a radical departure from existing Supreme Court jurisprudence, which draws that hard and fast line not based on science. So if there is a reason based on science to depart from the line, that is quintessentially a decision for the Supreme Court. If I didn't agree with you on that point about stare decisis and how to understand it, do you have an argument about the record in this case with respect to the science as to why this would be a poor case to use to shift the line? Yes, I do have a response to that, because if you look at the judge's sentencing ruling, what you'll see is that the judge here took into account the relative youth of the defendant, Mr. Gonzalez. The judge also specifically took into account the whole defense contention about adolescent brain development, et cetera. The judge took into account a variety of other mitigating factors, and yet the judge concluded in light of all of that that notwithstanding those mitigating factors, notwithstanding the youth of this defendant, there was no finding here as to whether he was incorrigible or not, which is the thrust of the contention about what Miller type thing might suggest would be necessary. So I guess my question, maybe I didn't put it right. With respect to the evidence as to the science in this case and the record as to the science, do you have an argument to make to us that this record is not sufficient to support the kind of Eighth Amendment claim that's being brought, even if under Miller it would be appropriate for a lower court with a sufficient scientific evidentiary basis to go beyond where Miller went? Okay, I'm sorry. I thought you were asking a specific question. Yeah, so the only record in this case on the science really is the attachments to the defense sentencing. Five minutes remaining. And we would submit that if a district court and this court are going to undertake the rather momentous decision to second-guess a Supreme Court decision based on intervening science, it should be done in a case where the science is well presented in the district court. And here the mere attachment of these attachments to the defense sentencing memo, coupled with only very brief defense arguments on point at sentencing, should not be enough to create a real platform for reexamining this question of whether science in itself is enough to cause us to depart from Miller. Mr. Lockhart, to what extent, if at all, does that attachment distinguish the state of the science as of the date it's written from the state of the science as it existed in 2012? I know that one of the affidavits was post-2012. But I couldn't find anything there that said this is new science. In other words, science that wouldn't have been available for presentation to the Supreme Court. Right. If you look, for example, at the thrust of the affidavit, a lot of the dates you will see referenced in it predate 2012. The affidavit refers to Supreme Court decisions from 2005-2010, refers to 2008 studies and so forth. So it's not evident that the bulk of this material wasn't available at the time Miller was decided. But beyond that, there was a question raised concerning, well, putting aside the Eighth Amendment argument, how should we look at this through the prism of reasonableness? And so if the Court has no further questions about Miller, I'll shift gears and address the reasonableness claim. Is there any reason to look at reasonableness here differently than we do with any other claim of substantive unreasonableness? Namely, whether Judge Saylor offered a plausible rationale and reached a defensible result? No, there is no reason to look at it any differently. I thought the contention would be, if there was one, would be that although that's the rubric, given the age of the defendant and the length of the sentence, the interminable nature of the sentence, that in order for it to be a defensible result and a plausible rationale, the specific question of whether the person was incorrigible needed to be considered and addressed. No, we disagree with that, Your Honor. That would be importing an Eighth Amendment jurisprudence point into the back door of 3553. We don't think there's any ground to do that. An example, when a judge makes a very large variance, you require a more specific explanation than when they make a minor variance. And I think the idea here is, given the age and the length of sentence, the idea that there wouldn't need to be some specific account of how that makes sense, given the likelihood that people can change, given how young the person is and how long they're going to be incarcerated, that it would make sense, if you're going to give that kind of sentence, to address that very salient issue. And a failure to do so might not be reasonable. Well, that's an interesting point, which wasn't raised at the sentencing by the defense attorney, either during the course of the sentencing argument, in the sentencing memo, or in the aftermath of the district court's ruling, after the district court gave its 3553 rationale. One point we make in the brief is that, to the extent there is a claim of procedural error here, and it seems to be what you're driving at now is procedural error, somehow, for a district court judge, in this context, to not make an express finding of permanent incorrigibility, that procedural claim was never raised at any time. That's time. And therefore, a view of that would be for plain error, and the defendant necessarily cannot satisfy the plain error standard, because there is no case law whatsoever that supports that proposition, and he cannot show that, were the case formatted, he would likely get a different result. Unless the court has further questions, we'll rest on our brief. Any further questions? I'm content. Me as well. Okay. All right. Counsel, you need to turn on your mic, I think. Can you speak? Yes. Okay, now you have your two minutes. Thank you, Your Honor. First of all, with respect to Miller, there is specific language in Miller that applies to brain development on page 2464 that's quoted on page 18 of our brief. And as far as scientific evidence is concerned, the government had the affidavit that the defendant submitted at sentence, yet at no time did the government present any proof at all regarding the differences between an 18-year-old and a 20-year-old. Instead, what the government did at sentence was fought from the dooms of the crime. And all the cases, the Supreme Court cases, have said that the gruesomeness of the crime is not a factor to be considered when going forward to see if this defendant is capable of rehabilitation. And I would just point out to a very significant fact that we pointed out on page 22 of our brief, in May 2017, the U.S. Sentencing Commission issued a statement regarding youthful offenders, and specifically noted the difference in brain development between an 18-year-old and even a defendant in their 20s. And we think that there is room for this court, given the Laconian nature of this sentence, to either grant a hearing to determine the rehabilitation issue, and also, through more, use the scientific evidence which was developed subsequently, very clearly since Miller, to address it in terms of the 20-year-old and his ability to function as an adult. Thank you. Okay. If there are no further questions, we will conclude argument in this case. That concludes argument in this case.